Thank you. Good afternoon and may it please the court. My name is Rebecca Schor for the appellant, Jose Morales. I'd like to reserve three minutes for rebuttal. There are four issues addressed in the briefs. I'll be focusing my comments today on the first two, equal protection and due process. Unless there are questions, I'll leave my arguments on qualified immunity in the eighth amendment to the briefing. Turning to my first point, this court should reverse and remand because the district court erred by granting the government's motion to dismiss and ruling that Mr. Morales could not bring his equal protection claim because of res judicata for two reasons. First, res judicata does not apply to limited proceedings where there is some sort of formal barrier to recovery. Here, Morales could not seek damages in his state court petition. The restatement tells us that where a plaintiff cannot seek a certain remedy, i.e. damages, because of limitations on the subject matter jurisdiction of the courts, res judicata will not apply. The Ninth Circuit has adopted this particular restate provision, as has the United States Supreme Court. The United States Supreme Court has stated that where a state judgment will not have claim preclusive effect on a cause of action that is within the exclusive jurisdiction of the federal courts. It reasons that preclusion rules assume that the plaintiff could have commenced his action in a court in the same system of courts that was competent to give full relief. But here, the state court was not able to give full relief because the state habeas system does not allow for damages. So Gonzalez and Furness were both about state habeas too, weren't they? And so why, how can we distinguish them? That's correct, Your Honor. They were both about state habeas petitions. First, those cases did not take into account that Supreme Court decision that I just mentioned. But second, both The petitioners there lost their state court petitions. They then brought federal claims, hoping for different outcomes. But neither case addresses what would have happened if the petitioner had won his state court petition. The issue the courts faced in those cases was the risk of different outcomes in state and federal courts. If the petitioner lost in state court, but then won damages in federal court, the federal court would have necessarily ruled that some aspects of his claim, meaning the state court would have ruled a loss where the federal court would have ruled a win. That isn't how the reasoning was though, was it? Wasn't the reasoning just about there having been the earlier proceeding in which the claim was brought? Well, Your Honor, if we look at the Gonzalez case, they actually state that California's general rule is that a valid final judgment on the merits in favor of a defendant serves as a complete bar. It does not say the same for a petitioner. It simply didn't rule one way or the other on that question. You, I mean, usually, usually when a plaintiff is trying again, it's because they've lost though. So it's just, I mean, why should we interpret that as being a meaningful, uh, as a word really limiting the holding? Well, Your Honor, first, you're exactly right there. It is a very narrow circumstance where a petitioner would win his claim below. So here, it's not that we're making a brand new rule. It's that Mr. Morales on the facts of his case, it's a different situation for him. Um, but second, we have to look at the policy behind res judicata, that we don't want conflicting decisions, but where there's a possibility when the petitioner wins in state court and then can bring a claim in federal court for a relief that he was not able to plead in state court, that does not result in necessarily conflicting decisions. And the policy is just different here. In addition to limited proceedings, because you cannot claim damages in a state habeas petition, res judicata does not apply here because Mr. Morales did not seek anything other than declaratory relief. In fact, Mr. Morales didn't ask for any specific relief in his state court petition. It was a preprinted form that was provided by the state. In its opposition brief, the government argues that Mr. Morales acquiesced to the state court's grants of injunctive relief by being silent, and therefore the business res judicata exception does not apply. But his silence should not be used against him. It's important to remember that we're at a motion to dismiss stage and all inferences must be made for the petitioner and the plaintiff at this stage. It's kind of an odd posture, though, because usually with a pro se litigant, we would read the complaint generously. Like, wouldn't we usually, if someone doesn't exactly say what they want, assume that they want injunctive relief and want the problem to be fixed? That may be the case, but here, the state form just didn't allow for any type of relief. And while the court fashioned injunctive relief, perhaps Mr. Morales was simply hoping that a court order dictating that he is entitled to declaratory relief would be enough to get the prison to do something to change its policies. And he wasn't given the opportunity to say what he would have wanted in a different situation or to ask for any particular coercive relief. There, the government also argues that he could have sued in federal court in the first instance. And there are just two pieces of the procedural history here that I want to bring to your attention. First, Mr. Morales sued in the state court decision that came down originally in 2002 and was affirmed by the Court of Appeal in 2004. It was the same challenge at issue in Morales. In the Escalera case, the court reserved jurisdiction to enforce further proceedings that came up to enforce that case. Mr. Morales, in fact, sued in Escalera in the first instance. He actually submitted a brief in that, but the court clerk returned the brief and said he needed to file a state habeas petition. The prisons, it therefore made sense for Mr. Morales to sue in the state court, the same court that found for Escalera. Secondly, when Mr. Morales filed his state habeas petition, he was still locked down. He was in the segregation that he was challenging. So it made sense for him to seek speedy and would come much quicker than if he did so in federal court. So for these procedural reasons, it simply made sense for him to file in state court. I noticed the reference to cheap, and I think it was in your brief as well. Can you explain the difference in expense? Your Honor, frankly, I'm not actually sure. The government pointed out in its brief that state habeas petitions, perhaps because they are typically quicker, would result in cheaper relief. There is no policy that says, or rule that says state court habeas petitions are in fact cheaper. That was just something pointed out by the government. So I actually do have a question about the Eighth Amendment claim, which I know you weren't planning to address, but I'm just wondering how how Defendant Bell would have known that the conversation was about the Eighth Amendment issues of the hygiene supplies and outdoor time, rather than being a reference to his equal protection rights? Well, the question isn't if Defendant Bell knew about it at the time. In Mr. Morales' initial federal complaint, he actually stated Eighth Amendment. He used those words. And then Defendant Bell states that he wasn't aware that that was applying to him. Under either event, though, because we're in a notice pleading standard, all Mr. Morales needed to show was that there was a deprivation that was sufficiently serious, and that it occurred with deliberate indifference. Here, both of those prongs are met for Mr. Morales, and and Defendant Bell was on notice that he was pleading this claim against Somerville. Sorry, you're very right to correct me because I didn't word the question correctly. We're talking about whether the complaint alleges that Defendant Bell knew these things. And so it seems like the main idea was that Defendant Bell said, like, I don't care about your rights. But how do we know that when he said that, he was talking about, or why should we read the complaint as telling us that when he said that he was talking about the Eighth Amendment? The same underlying facts apply to each of these potential constitutional violations. So the fact that he was segregated unconstitutionally and denied his rights to outdoor access, to visitors, to basic hygiene supplies. So whether Defendant Bell made that statement that he didn't care what the court said and thought that that was in reference to equal protection, due process, or the Eighth Amendment, it doesn't actually matter for our purposes because he's on notice here that when Mr. Morales put the Eighth Amendment in his complaint, that that fact could be then used against him. I guess I'm just trying to figure out, for deliberate indifference, we need, like, a subjective awareness. And how do we know that Defendant Bell was subjectively aware, from the allegations in the complaint, how do we know that Defendant Bell was subjectively aware about the hygiene supplies and the outdoor time? We don't necessarily at this stage, Your Honor, but again, because we're at motion to dismiss, that's something that could be developed in our record, and we must draw all inferences for our petitioner here. But if the complaint is going to state an Eighth Amendment claim, it seems like it needs an allegation about this. So if we think that it fails because it doesn't have that allegation, is this something that could be fixed through amendment, and should you have been given leave to amend? Yes, Your Honor, to both parts of that question. First, he could fix it through amendment by, one, using the words Eighth Amendment in his amended complaint, which he did in the first instance, but not in his first amended complaint. And second, he could state more facts from either his memory or based on the pleading standards to meet those claims. So you didn't ask for leave to amend in your brief, but should we consider that anyway at this point? Yes, Your Honor, based on the liberal standards for giving amended complaints, that would be something we'd be asking for. Your Honor, turning to my second point on due process, Morales properly stated a claim for denial of due process in his amended complaint. There are two potential methodologies for establishing procedural due process brought by a prisoner, and Mr. Morales met the standard under either test. The first is Sandin v. Connor, the U.S. Supreme Court test that held that where there is an atypical and significant hardship in relation to the ordinary incidents of prison life, there needs to be procedural due process. The second is the Hayward v. Fortunier case by this court, which stated that procedural due process is a response to a genuine emergency and is not used as punishment. This court may not decide which standard is correct in this instance, as Mr. Morales met the standards under either. He was locked down for two years, a continuous lockdown of two years, not allowed visitors access to basic supplies or privileges, and that's immensely atypical from other segregated subgroups in the prison at large. While there may have been a genuine emergency that precipitated the lockdown two years prior, and there certainly wasn't for a continuous two years, such that a denial of procedural due process was proper here. Doesn't Hayward say that when it's an individual determination, though, you don't need a hearing? Sorry, I said it backwards. I'm having trouble articulating my questions with you. So it's the opposite. Doesn't it say that when it's a general lockdown, you don't need an individualized hearing? It's only for an individual lock, like an individual punishment? Your Honor, that's certainly true when you first initiate the lockdown, but not as it goes on. And furthermore, Mr. Morales actually is challenging his specific gang validation or his ethnicity status as Southern Hispanic. Throughout the record, he states that he wasn't given the and yet they housed him as a Southern Hispanic, and by virtue of his being housed in the Southern Hispanic group, he was subject to this lockdown. The government analogizes... Sorry, maybe I should just ask, do you want to save some time for rebuttal because we're running out at this point? I do. Thank you. I'll reserve the rest of my time. Thank you. Thank you. All right. Good afternoon. May it please the court. Michael Quinn, counsel for defendants and appellees. In this case, the district court decision should be affirmed for the following reasons. First, with regard to the equal protection claim, plaintiff prevailed on his equal protection claim in the habeas action. Therefore, the district court correctly concluded that the 1983 action could not proceed. And in addition, with regard to the due process claim, Hayward and the cases that have been decided after Hayward indicate that subjecting specific groups of prisoners to lockdowns, as Morales was in this case, does not require the prison officials to provide those inmates with procedural due process protections. I think the first point with regard to the equal protection issue, Gonzalez and Furness clearly indicate that if two actions involve the same cause of action, claim preclusion applies even if the second suit seeks different forms of relief. And here, counsel indicated that he had no opportunity to ask for a course of relief. That's just not accurate. On page 173, if you look at the petition that was filed with the habeas court, it included his administrative grievance, which outlined a so-called security program proposition that Morales had described, which would allow Southern Hispanic inmates and other inmates to go on the yard every other day. So there was, even though he didn't explicitly state, I'm seeking declaratory relief, I'm seeking coercive relief, he sketched out a request for outdoor activity, that sort of relief, that goes beyond mere declaratory relief. And why shouldn't we agree with your opposing counsel's reading that these holdings were limited to when the defendants have prevailed? There's just nothing in the case law, even when the defendants prevailed in Furness, and yes, there's nothing in the case law that indicates that the decisions would be different or would somehow be turned on that issue. The courts, again, have been clear that if these cases involve, the concern is really, do they involve the same primary right? And here Morales doesn't even attempt to argue that the primary rights in the two cases, the habeas action and the 1983 action, were somehow different. They're identical. And this seems to me to be just sort of black letter, so to speak, res judicata, where he received relief in this action, he should not be just in terms of like court efficiency and the concern about duplicative or inconsistent judgments. He received his relief. He's the master of his complaint. And counsel stated it made sense for him to pursue his claims in state court. Okay, again, he's the master of his complaint. He could have chosen to go the 1983 route. And if he wanted more speedy relief in federal court, he could always attempt a preliminary injunction or a temporary restraining order or something to that effect. Inmates do that, but he chose to pursue the habeas path, just like the inmates in Gonzalez and Furness. And once they receive their decisions, their relief in those cases, that's the end of the adjudication, basically. He should not be permitted then to just pursue relief in federal court. Can I ask you about the Eighth Amendment claim? So it seems like he could potentially state an Eighth Amendment claim, and the issue might just be whether there are adequate allegations that defendant Bell had the awareness that was necessary. Why shouldn't he at least be given leave to amend to add that? Well, there's several reasons. First, he's already been allowed to amend in this case, and he already stated very clearly particular causes of actions, namely the due process claim that we're talking about and the First Amendment denial of access to courts, which is screened out by the district court. But he's a sophisticated litigant as inmates go. He was able to clearly state the particular claims that he wanted to through his amended complaint. So he's already had that opportunity. In addition, if you look at the Bogovich case... Wasn't he trying to state an Eighth Amendment claim? I mean, he was trying to plead an Eighth Amendment claim, wasn't he? With regard to defendant Bell, I don't believe so. If you look at the complaint, his only allegation was that defendant Bell ignored his request for an explanation for he was placed in lockdown, although he had been disciplinary free, and therefore that deprived plaintiff of his right to due process. And we were very specific with the district court. We filed multiple motions. We filed the motion to dismiss on race judicata grounds, and the court got rid of the equal protection claims that had been said. This complaint still includes multiple claims against multiple defendants. He hasn't defined what these claims are about. And only then did the court say, okay, you have to give him a chance to clarify his complaint. And he did that, but he never brought an Eighth Amendment claim against defendant Bell. The facts, he's got the wrong defendant, and he's really got inadequate facts. And again, he's already had a chance to amend. Well, when was his chance to amend on this issue? I mean, it seems like his original complaint had a statement of claim. It talked about, he attached his state habeas. The state of habeas said prison officials are violating the Eighth Amendment by placing him in lockdown and imposing atypical and significant confinement. And then his memorandum of points and authorities talked about cruel and unusual punishment. So why wasn't it already there? You're talking about the original complaint. I think the court, the district court may have screened out the Eighth Amendment. I don't believe there was ever an Eighth Amendment claim that the district court. I think maybe the district, I don't know that the district court screened it out. Is there a ruling screening it out? If there is, I'm not aware of it, I think. Well, there's never been an Eighth Amendment claim, I don't believe, that we addressed in this case. I think that might be part of the problem though. I just am not really understanding why this Eighth Amendment claim went by the wayside. Well, there was a request in our Rule 18, Rule 20 motion to dismiss for clarification. Who was he bringing a lawsuit against? Who were the specific defendants? What claims does he have against what particular defendants? You can look at, I believe it's page 37 to 42 of our Supplemental Exemption Record, which lays out again that Rule 18, Rule 20 motion that basically says we don't know who he's suing. And then the court basically directed him to specify and he came up with this claim against defendant Bell. But the claim against defendant Bell doesn't deal with anything remotely dealing with the Eighth Amendment. But doesn't it include the outdoor exercise and the hygiene supplies? He references that he's been, due to the lockdown, been deprived of all sorts of privileges. And so why aren't those facts that could state an Eighth Amendment claim? I mean, he may not have put the correct legal label on it, but I don't know that he has to do that. He has to state alleged facts that could support a claim and it sounds like an Eighth Amendment claim. Well, he has to allege facts against a defendant. Well, it seems like he was trying to sue Bell and it seems like maybe Bell isn't. I don't know, but I'm not sure you ever said Bell wasn't involved in the Eighth Amendment aspect. I didn't understand that to be the response anyway. The only, again, the only allegation against Bell is that he ignored his request for a hearing to explain why he was placed in a lockdown and deprived of due process. He very clearly states a due process. He's attempting to state a due process claim against Bell. He labels it that, but then he also talks about the lack of exercise and lack of hygiene, right? Not in connection with anything defendant Bell has done. Well, how can we, hold on, were there other people, who would we think those allegations were against? They're there for someone. All I can go on is, you know, what we were going on was in the end, the court screened this amended complaint and said the only claim left is a due process claim against defendant Bell. And that's what we, and that's where we made our motion to dismiss on citing Hayward and the cases that have followed Hayward. So again, there's no facts to support a Eighth Amendment claim against defendant Bell. He's had ample, he's had previous opportunities to amend his complaint. He didn't state, he didn't mention the Eighth Amendment claim. He mentioned claims again, on First Amendment grounds and due process grounds. So, and the court really, if you look at the Bogovich case, shouldn't undertake to infer another cause of action when a pro se complaint clearly states a claim under a specified cause of action. Again, here he specified that I'm suing under the First Amendment due process. And that's how he, again, he's the master of his complaint. And if he said I'm suing under the First Amendment, the problem is they're beating me up every day. What would a court do? Well, they'd have to screen, they'd have to screen the complaint under the PLRA. You know, the court would probably say that it hasn't stated, he hasn't stated a First Amendment claim. They might at that point, you know, and then maybe send it back to him or screen it out. I don't, you know, but that's not this case. He's stated in his headings, First Amendment, due process, and then he stated facts that related to those types of claims. With regard, and then just going back to the due process claim, Hayward and the cases that come after it very clearly state that in a situation like this, where an inmate is placed on lockdown, but he's not being punished individually, it's a state of emergency in the prison, that even a two-year lockdown, if you look at the Negretti case, which we cited in our papers, that that doesn't trigger due process protections on the part of an inmate. And even if this court concluded that somehow Bell had violated the Constitution in some way, he would be entitled to qualified immunity as the district court acknowledged, because a reasonable officer in his position, you know, in terms of the legal underpinnings that an officer has, or the guidance that an officer has to rely on, you know, Hayward and the cases that- Sorry, can I just bring you back to this Eighth Amendment issue? Because I think you thought it was screened out, but I found the ruling. It seems to be in the motion to dismiss ruling, where the judge says, starts talking about the Eighth Amendment on page six of the ruling at ER 12. And so it's not as, I don't think it's any kind of like screening order, it's in the motion to dismiss ruling. And the judge says that the problem is that it was raised too late, but we were just earlier talking about the original complaint, talking about the Eighth Amendment. So this is about the second complaint, the amended complaint, and the earlier complaint actually did have it. So I'm just not really understanding what happened, how this- I mean, he raised, I believe he raised it in his opposition to our motion to dismiss, in an effort to kind of preserve his case. He said, hey, you should let me pursue an Eighth Amendment claim. And that's where the regard, and it cites to the Bogovich case, and says, hey, you've already, you clearly stated claims in this amended complaint. We're not going to read in, or I'm not going to read in, an Eighth Amendment claim into this, into this amended complaint. So he raised this in his opposition to the motion to dismiss, is my recollection. It says plaintiff asserts this claim for the first, for the first, probably it should say time, after the matter has been for six years. The court agrees, but it's not true. It was pled in the first complaint. But I don't believe it was ever dealt with in the, in the first complaint. I, the first complaint, we, the court basically granted our motion to dismiss on Rule 18, Rule 20 grounds, and allowed him to, to amend. But the, the, the court concluded that the initial complaint was inadequate. So that's how he, that's how he got to a situation where he was amending his complaint. So the idea that Defendant Bell would somehow be on notice that he was somehow sucked into some sort of Eighth Amendment claim against him, you know, again, in that, in that rule, in that motion that we were, that we filed arguing that this deals with unrelated claims against unrelated defendants who we can't even identify. We said, if you don't grant this motion, at the very least, order him to make a more definite statement about who exactly he's suing. So again, in short, we don't believe there are ample facts to support an Eighth Amendment claim, or the proper defendants have been named to support an Eighth Amendment claim. I see my time is up. Thank you. Thank you, counsel. I think you have some time for rebuttal. Thank you. Your Honor, just starting with your last point here, on EOR 167, we have this state court complaint that he incorporated by reference into his federal complaint. And there, Morales very clearly says that prison officials are violating the Eighth Amendment clause against cruel and unusual punishment by placing inmates on lockdown and imposing atypical and significant confinement. He then, in his amended complaint, does not use the words Eighth Amendment, but he states that Defendant Bell deprived him of his rights, and that Defendant Bell made this statement that he was not, he didn't care what the court said, and he could do what he wanted. Read together, read liberally together, those do state an Eighth Amendment claim sufficient to put Turning back briefly to the Equal Protection Residue Deposit Issue, counsel raised the issue of the administrative grievance asking for a particular coercive relief. First, that grievance was not incorporated into his state court petition. It was attached only to show exhaustion. If, in some way, it could be read as having been incorporated, though, it wouldn't matter because damages are still not available from state habeas petitions. So even if he had pled that he wanted damages, the state court could not have granted it to him. So when we look at the first exception that I discussed to res judicata, where we have a limited proceeding that, based on the subject matter of a court, does not allow for a certain type of relief, here that would apply. And that Supreme Court case that I mentioned, by the way, versus the American Academy of Orthopedic Surgeons at 470 U.S. 373. Finally, just briefly on the Negretti case, that case was decided at a motion for summary judgment, which is very different. There, the court did say that a prisoner had not shown enough facts to support a triable issue. Here, Mr. Morales has not had the opportunity to prove if he can show triable facts. We should be giving him that opportunity, and we would ask the court to reverse and remand on these grounds. Thank you. Thank you both sides for the helpful argument, and this was another case that was in our pro bono program. So thank you very much for your pro bono volunteer assistance. We really appreciate your efforts here, and they're very helpful to us. Thank you both sides, and this case is submitted.
judges: WALLACE, FRIEDLAND, Lasnik